IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| GEORGE DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 21-00860-CV-W-BP |
| | ) | |
| DENIS McDONOUGH, as Secretary of | ) | |
| the Department of Veterans | ) | |
| Affairs, and THE UNITED STATES OF | ) | |
| AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND DISMISSAL

In this case, Plaintiff George Davis—an African-American man with a disability who since October 2014 has worked for the United States Department of Veterans Affairs (the "VA") at its Kansas City Veterans Affairs Medical Center facility (the "KCVAMC")—asserts federal-law claims for: (1) employment discrimination based on age, race, and disability; (2) a hostile work environment; (3) retaliation; and (4) failure to accommodate a disability. (Doc. 1.[1]) Plaintiff alleges these claims against Defendant Denis McDonough in his official capacity as Secretary of the VA.[2] (*Id.*)

Now pending is Defendant's Motion for Summary Judgment. (Doc. 21.) The Motion is fully briefed, (Docs 21, 31, 32, 36), and, upon review, will be granted.

---

[1] Citations are to the Court's CM/ECF docket system and the page numbers generated by it.

[2] Plaintiff's Complaint also asserts these claims against a second defendant—the United States of America. (Doc. 1.) The USA has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), arguing it is improperly named as an additional defendant because, by statute, VA Secretary McDonough is the sole correct defendant. (Doc. 22.) Plaintiff responded by not opposing the USA's dismissal. (Doc. 28.) The USA's Motion is **GRANTED** and it is **DISMISSED**.

## I. Background

The Court finds there are no genuine issues regarding the following material facts.[3]

In October 2014, Plaintiff began working for the VA at the KCVAMC as a Maintenance Worker. (SOFs 13, 38.) Subsequently, medical limitations—chronic obstructive pulmonary disease ("COPD") and hand issues—prevented Plaintiff from performing the essential functions of his Maintenance Worker position. (SOFS 16, 17.) The VA continued to designate and pay Plaintiff as a Maintenance Worker, (SOF 19[4]), but it appointed him to perform the duties of a Work Order Control Clerk/Dispatch position, (SOFs 18, 43). Plaintiff's appointment was a temporary term appointment made pursuant to 5 C.F.R. § 316.302(b)(2), (SOFs 18, 20[5]), which enables an agency to "make a term appointment for a period of more than 1 year but not more than 4 years" and "extend appointments made for more than 1 year but less than 4 years up to the 4–year limit," 5 C.F.R. § 316.301(a). (SOF 21 to 23.) In this way, Plaintiff was appointed in 2015 and his appointment was extended in 2016, 2017, and 2018, such that his term appointment eligibility expired in 2019. (SOFs 19, 20, 24, 25, 26, 28.[6])

---

[3] The Court cites the parties' statements of fact and responses as "SOF _." Correcting for a misnumbering caused by two SOFs 32, SOFs 1 to 37 and responses thereto are from Docs. 21 and 32, and SOFs 38 to 85 and responses thereto from Docs. 32 and 36-1.

The Court addresses a few general and overarching matters about the parties' SOFs. First, the Court finds Plaintiff often purports to controvert one of Defendant's SOFs, but review shows Plaintiff's response to be (1) non-responsive to the SOF, in that it addresses a distinct proposition; or (2) not supported by the cited evidentiary materials. Second, the Court need not discuss the parties' SOFs that are not material under the governing law. With these principles in mind, the Court finds the SOFs discussed here to be uncontroverted, material, and not subject to genuine dispute. This applies throughout the Court's Order, and the Court will provide additional explanation with respect to a specific SOF only as necessary.

[4] Plaintiff's response is non-responsive as to Plaintiff being designated and paid as a Maintenance Worker.

[5] There is no dispute Plaintiff's appointment was temporary and made pursuant to 5 C.F.R. § 316.302(b)(2). (SOFs 18 and 20.) Plaintiff does dispute Defendant's assertion his appointment was a "limited duty" appointment, (see, e.g., SOFs 18 to 21), but the Court finds this point immaterial to the claims at issue here.

[6] Plaintiff's responses are non-responsive as to this sequence of the initial appointment and its extensions.

With his temporary appointment set to expire, Plaintiff began seeking other employment at KCVAMC. In 2018, Plaintiff applied for a Work Control Manager position but was not selected for it.[7] (SOFs 51, 52.) In July 2019, the VA posted one job opening for an Equipment Facilities and Services Assistant ("EFSA") position. (SOF 6.) Plaintiff applied for the EFSA position and was interviewed for it. (SOFs 7, 8, 60.) However, after being interviewed, the VA selected another candidate—Dane Laing, who is also an African-American man with a disability. (SOF 10.[8]) Plaintiff offers no direct evidence that the VA's decision to select Laing instead of him was based on discrimination, bad faith, or the like. Instead, of the four interviewees, the VA's resume review and interview process scored Laing highest and Plaintiff third, and the VA determined Laing's background and experience were stronger given the position's duties. (SOFs 9, 11, 12, 59.[9])

Subsequently, Plaintiff met with a VA Local Reasonable Accommodation Coordinator, seeking placement in a position consistent with his COPD. (SOF 31.) The VA searched for another position consistent with his medical restrictions and skill set that would have enabled him to remain designated and paid as a Maintenance Worker, but it did not find one. (SOF 32.[10]) Instead, the VA identified a different career position—a Work Order Coordinating Clerk

---

[7] Plaintiff's 2018 non-selection for this position is not at issue in this case, as discussed further below.

[8] That Dane Laing is African-American is not disputed. (SOFs 10, 57, 58, 69.) The Record also shows Laing is disabled, based on evidence provided by the VA's HR personnel. (Doc. 21-3, pp. 1, 2.) The Court finds this is admissible summary-judgment evidence of Laing's disability status. Fed. R. Civ. P. 5(c)(4).

Plaintiff makes a passing argument that Laing is not disabled, (SOF 57; Doc. 31, pp. 3-4, 15), relying on the affidavit of Robert Cheatham, a KCVAMC Maintenance Operation Section Chief, which states that, "based on [Cheatham's] personal knowledge" Laing is a "non-disabled man." (Doc. 32-1, pp. 1, 8.) The Court finds this does not create a genuine issue, because Cheatham's assertion is conclusory, does not provide supporting facts, and does not detail his ability to competently assess disability. Fed. R. Civ. P. 56(c)(4); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990) (stating that conclusory averments, speculation, and conjecture are generally improper in summary judgment affidavits); *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025 (8th Cir. 2006) (same).

[9] Plaintiff's responses do not controvert that Laing scored highest and the VA's determination was she had the strongest background and experience.

[10] Consistent with the VA's inability to find a suitable and available position, Plaintiff has not identified any such position.

3

("WOCC") position—to which Plaintiff applied and was appointed. (SOFs 36, 37, 72.) However, in this WOCC position, Plaintiff earned approximately $22,000 less than he had previously. (SOF 84.)

Based on this sequence, Plaintiff initiated an administrative complaint against the VA. As reflected in Plaintiff's administrative complaint and the resulting report about it, Plaintiff alleged that, due to his race and disability, he was unlawfully passed over for the EFSA position and denied a reasonable accommodation. (SOF 1, 2,[11] 3, 4; Doc. 32-2, pp. 4, 6-8.) Plaintiff later received an administrative notice of his right to sue, and it also indicated he had asserted claims based on race and disability. (Doc. 32-2, pp. 23-24.) This lawsuit followed, (Doc. 1), and now pending is Defendant's Motion for Summary Judgment, (Doc. 20.)

## II. Legal Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence in the light most favorable to the non-movant, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita*, 475 U.S. at 587-88. The non-movant may not simply deny the allegations but must point to evidence in the Record demonstrating the existence of a genuine and material factual dispute. Fed. R. Civ. P. 56(c). These standards apply with equal force in an employment discrimination case. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc).

---

[11] Plaintiff's response—which concerns his efforts to supplement or expand his administrative proceedings, (Docs. 32-12, 32-15)—does not controvert the substance and contents of the administrative proceeding's documents.

4

**III. Analysis**

Plaintiff's Complaint alleges four distinct counts, and below the Court addresses each in the order most conducive to analysis.

**a. Discrimination based on Age, Race, and Disability**

Plaintiff's Count I asserts a claim of employment discrimination based on age, race, and disability, in violation of three federal laws: the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* (the "ADEA"); Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-16, *et seq.* ("Title VII"); and the Rehabilitation Act of 1974, 29 U.S.C. §§ 794, *et seq.* This claim arises from the VA selecting Laing for the EFSA position instead of Plaintiff.

The Court first addresses this claim's age component, which Defendant argues Plaintiff has failed to administratively exhaust. (Doc. 21, pp. 10-13.) To file an ADEA claim in federal court, the plaintiff must first exhaust his administrative remedies. *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 835 (8th Cir. 2002). Accordingly, the scope of the administrative proceedings limits the claims a plaintiff may file in court. *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005) (holding a complaint may "be as broad as the scope of the EEOC investigation which reasonably could be expected to result from the administrative charge.").

Here, the Record indicates Plaintiff pursued administrative proceedings based on "race" and "disability" but not "age." Thus, a straightforward review shows Plaintiff did not exhaust the age component of his discrimination claim. *Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 801 (8th Cir. 2011) (ruling age claim was not exhausted, where the plaintiff's "claim with the EEOC mentions only discrimination on the basis of race and sex [and] the boxes for age and retaliation discrimination remain unchecked.").

Plaintiff argues his administrative proceedings "clearly included race plus age claims," (Doc. 31, p. 6), but the Record does not support him. The administrative proceeding's original investigation and the supplementary investigation do not mention age as an additional factor in the alleged discrimination, (Docs. 32-2, 32-3), and the same is true of the affidavit Plaintiff presented to supplement the proceedings, (SOF 2; Docs. 32-12, 32-15). Because the administrative proceedings focused on only Plaintiff's race and disability, there is no basis for finding those proceedings also encompassed his age. *See Onyiah v. St. Cloud State University*, 684 F.3d 711, 718 (8th Cir. 2012) (ruling national-origin claim was not exhausted, where the EEOC charge "[did] not in any way link" the adverse employment action to that protected class).

Turning to the race and disability components of Plaintiff's claim, Plaintiff did not present any direct evidence of discrimination, so the Court analyzes his claim under the familiar three-step burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1993). As the Eighth Circuit has explained, "the plaintiff has the initial burden to establish a prima facie case for each claim." *Watson v. McDonough*, 996 F.3d 850, 854 (8th Cir. 2021). If the plaintiff successfully does so, the burden shifts to the defendant to "produce a legitimate, nondiscriminatory reason for its decision." *Id*. If the defendant does so, "the burden returns to the plaintiff to prove that the proffered reason was pretext for discrimination." *Id*.

To satisfy the first step—establishing a *prima facie* case—for a non-selection claim, "a plaintiff must show (1) [he] is in a protected class; (2) [he] was qualified for an open position; (3) [he] was denied that position; and (4) the employer filled the position with a person not in the same protected class." *Smith v URS Corp.*, 803 F.3d 964, 968 (8th Cir. 2015). Here, Defendant argues Plaintiff cannot satisfy the fourth element, in that both he and Laing are African-American and disabled. The Court agrees and finds Plaintiff cannot make a *prima facie* case. *See Gipson v.*

6

*Dassault Falcon Jet Corp.*, 983 F.3d 377, 381 n.2 (8th Cir. 2020) (ruling plaintiff failed to present a prima facie case, where both he and the person selected were of the same race).

Even if Plaintiff had established a *prima facie* case, his claim fails at both the second and third steps. As to the second step, Defendant argues Plaintiff was not selected because the VA's resume review and interview process gave higher rankings to other candidates—and specifically to Laing, the candidate ultimately selected. (Doc. 21, pp. 23-25.) This is a legitimate and non-discriminatory explanation for not selecting Plaintiff. *Hill v. City of Pine Bluff, Ark.*, 696 F.3d 709, 714 (8th Cir. 2012) (ruling it legitimate and non-discriminatory for an employer to hire the more experienced and better qualified candidate).

As to the third step, Plaintiff's argument for pretext—that he was the most qualified candidate and the interview process focused on job duties and skills that were not relevant or fair, (*e.g.*, Doc. 31, p. 12)—is unavailing. The Record shows the interview questions were relevant to and appropriate for the position, (Doc. 21-7), and the case law holds arguments based on subjective feelings of unfairness and discrimination—like those Plaintiff makes here—are not a basis for finding pretext. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1050 (8th Cir. 2011) (ruling the plaintiffs' "opinions that they should have received higher interview scores are simply irrelevant," because the relevant factor is "the employer's perception," "not the applicants' subjective evaluation of their own relative performance"). Additionally, Plaintiff's arguments he was treated less favorably than white employees—specifically, Brian McGahee's employment in the Work Order Control Clerk/Dispatch position before his retirement in 2016, (SOFs 42 to 44), and Dave Gibberson's selection for the Maintenance Control Manager position in 2018, (Doc. 21-3, p. 4; Doc. 32-9; SOFs 51-52)—are not at issue in this case, because those employment actions constitute discrete events, Plaintiff did not initiate employment counseling regarding them within the

7

required 45-day timeframe, and his administrative proceedings do not otherwise encompass them. *E.g., Cross v. Ferriero*, 580 F. App'x 502 (8th Cir. 2014).

Plaintiff also argues that, when he reached the four-year limit of his temporary appointment to the Work Order Control Clerk/Dispatch position, the VA should have extended his appointment or converted his temporary appointment to career-eligible employment. (Doc. 31, pp. 6 to 8.) Given the claims Plaintiff has alleged, it is not the Court's place to determine whether the VA could or should have handled Plaintiff's employment in this manner.[12] *See Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 916 (8th Cir. 2007) (stating the courts are not "super-personnel departments" and do not review "the wisdom or fairness of the business judgments made by employers"). Instead, the issue presented here is whether the VA discriminated against Plaintiff based on his race or disability, and, for the reasons discussed, Plaintiff has presented no evidence it did so. Moreover, the Record shows the VA was adhering to the four-year limitation for temporary appointments imposed by 5 C.F.R. § 316.301(a), which is a legitimate and non-discriminatory explanation for its actions.

### b. Failure to Accommodate Disability

Plaintiff's Count IV asserts the VA failed to accommodate his disability by failing to participate in the required interactive process, in violation of the Rehabilitation Act.[13] This claim

---

[12] The Court notes that creating an exception to extend an appointment beyond the four-year limit requires the Office of Personnel Management's authorization and that the exception be "clearly justified." 5 C.F.R. § 316.301(b). Additionally, 5 C.F.R. § 316.302(b)(2) states "[t]erm appointments under this section … do not lead to conversion to career-conditional appointment." Plaintiff does not address these provisions.

[13] Under the Rehabilitation Act, an "otherwise qualified individual with a disability" shall not, "solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under … any program or activity conducted by an Executive agency[.]" 29 U.S.C. § 794(a). As is relevant here, the Rehabilitation Act incorporates the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. (the "ADA"), such that cases under the ADA are instructive as to the Rehabilitation Act. *See, e.g.*, 29 U.S.C. § 794(d); *Wojewski v. Rapid City Regional Hosp., Inc.*, 450 F.3d 338, 344 (8th Cir. 2006). In this way, the Rehabilitation Act requires an employer to assess a reasonable accommodation for a qualified disabled employee by discussing the issue with the employee, a process which is known as the "interactive process." 29 C.F.R. § 1630.2(o)(3); 42 U.S.C. § 12112(b)(5)(A).

8

arises from Plaintiff no longer working in the Maintenance Worker position and earning reduced compensation in the WOCC position.

For a failure-to-accommodate claim, to make a *prima facie* case, a plaintiff must prove "he or she (1) is disabled within the meaning of the ADA, (2) is qualified (with or without reasonable accommodation) to perform the essential functions of the job at issue, and (3) has suffered an adverse employment decision because of the disability." *Cravens v. Blue Cross & Blue Shield of Kan. City*, 214 F.3d 1011, 1016 (8th Cir. 2000). Where a plaintiff is unable to perform the essential functions of their position, they must "make a facial showing that a reasonable accommodation is possible." *Fenney v. Dakota, Minnesota & E. R. Co.*, 327 F.3d 707, 712 (8th Cir. 2003).

Here, there is no dispute Plaintiff is disabled and unable to perform the essential functions of his former Maintenance Worker position with or without an accommodation. On this basis, Defendant argues Plaintiff was not qualified and thus cannot make a *prima facie* case. *See Cravens*, 214 F.3d at 1016. In contrast, Plaintiff argues he was a qualified individual because he could perform the essential functions of the EFSA position or a similar position at the same pay grade he was seeking. *See* 42 U.S.C. § 1211(8) (defining "qualified" to mean the individual can perform "the employment position that such individual holds *or desires*") (emphasis added).

Assuming Plaintiff was a qualified individual, a *prima facie* case requires there be an alternative vacant position he could have worked. *Cravens*, 214 F.3d at 1017, 1020. An employer is not required to create a vacant position, such as by removing another employee from the plaintiff's desired position. *Id.* at 1019. Instead, the plaintiff must specifically identify an alternative vacant position. *Ehlers v. University of Minnesota*, 34 F.4th 655, 661 (8th Cir. 2022).

Applying the law here, Plaintiff cannot make a *prima facie* case. Plaintiff applied for the one open EFSA position but the VA selected Laing for it; the VA was not required to select

9

Plaintiff or to create a second open EFSA position for him. And, when the VA looked for another position that would enable Plaintiff to maintain his designation and compensation as a Maintenance Worker, it did not find any, and Plaintiff likewise has not identified any. Plaintiff thus cannot make a *prima facie* case the VA failed to accommodate him. *See Ehlers*, 34 F.4th at 661 (affirming summary judgment for an employer, where the plaintiff "did not submit the job posting, the job title, or any evidence of the duties or requirements of any position" she sought as an accommodation),

Even if Plaintiff could make a *prima facie* case, Defendant argues the VA accommodated him as a practical and functional matter, in that the VA offered Plaintiff the WOCC position. (Doc. 36, p. 9.) The Court agrees, as the VA identified the WOCC position to enable Plaintiff to work consistent with his skill set and disability and Plaintiff accepted that position. *See, e.g.*, *Cravens*, 214 F.3d at 1019 (explaining "an employer may reassign an employee to a lower grade and paid position if … a comparable position is not available.").

Plaintiff seeks to work a different job at his previous compensation, but this grievance does not support a failure-to-accommodate claim. *Faidley v. United Parcel Service of America*, 889 F.3d 933, 942-43 (8th Cir. 2018) (holding "an employer only has to provide an accommodation that is reasonable, not an accommodation the employee prefers"). Plaintiff also argues he "was never contacted to engage in an interactive process regarding reasonable accommodation." (Doc. 31, pp. 11, 12.) This argument is contrary to Plaintiff's summary-judgment facts, which state "Plaintiff was involved in the Reasonable Accommodation process[.]" (SOF 70.) This argument is also contrary to the Record, which shows the VA repeatedly extended Plaintiff's work under the Maintenance Worker designation and later met with him and searched for a suitable position for him, ultimately identifying and offering him the WOCC position, which he accepted. *See Faidley*,

10

Case 4:21-cv-00860-BP   Document 48   Filed 09/01/23   Page 10 of 12

889 F.3d at 943-44 (explaining that, to show an employer failed to participate in the interactive process, the employee must present evidence the employer did not make a good faith effort to assist in accommodation requests); *Hill v. Walker*, 737 F.3d 1209, 1218 (8th Cir. 2013) (stating there is no "per se liability under the ADA" for failing to engage in an interactive process).

### c. Retaliation

Plaintiff's Count III asserts a claim for retaliation, in violation of Title VII. Defendant argues Plaintiff failed to administratively exhaust this claim. (Doc. 21, pp. 10-13). Plaintiff concedes this point. (Doc. 31, p. 5.)

### d. Hostile Work Environment Claim

Plaintiff's Count II asserts a claim for hostile work environment based on race, color, and national origin, in violation of Title VII. In support, Plaintiff relies on his grievances addressed above—relating to his non-selection for the EFSA position, lack of an accommodation, reduction in pay, and the like—arguing this "harassment had the constant drip of a broken faucet" that collectively amounted to "a hostile work environment permeated with discriminatory animus[.]" (Doc. 31, pp. 12-13.)

Defendant argues both that (1) Plaintiff's grievances—even taken cumulatively—do not rise to the level of a hostile work environment under controlling precedent and (2) Plaintiff has not presented evidence of a causal link between his race, color, or national origin and the alleged hostile work environment. On both points, the Court agrees. A hostile work environment exists only where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Palesch v. Mo. Comm'n on Human Rights*, 233 F.3d 560, 566 (8th Cir. 2000). Plaintiff's grievances do not satisfy this high standard. *See, e.g.*, *Palesch*, 233

F.3d at 566-67 (finding no hostile work environment, even though plaintiff was frequently ignored by and socially isolated from colleagues and one co-worker damaged plaintiff's property, shoved her against a wall, and threatened her with bodily harm). Even if Plaintiff's grievances were sufficient, he has presented no evidence they are the result of his race, color, or national origin for the reasons discussed above. *See, e.g.*, *Hervey v. County of Koochiching*, 527 F.3d 711, 722 (8th Cir. 2008) (holding plaintiff failed to prove "she was the target of harassment," as it was insufficient to "simply recite a list of actions" and "claim they were taken [against her] because she is a [member of a protected class]").

### III. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

                                                     /s/ Beth Phillips
                                                     BETH PHILLIPS, CHIEF JUDGE
                                                     UNITED STATES DISTRICT COURT

DATE: September 1, 2023